*In re* JOHNSON

Docket No. 318715. Submitted May 6, 2014, at Grand Rapids. Decided
    May 20, 2014, at 9:15 a.m.

    The Kalamazoo County Prosecuting Attorney petitioned in the
Kalamazoo Circuit Court, Family Division, on behalf of the De-
partment of Human Services, seeking the termination of the
parental rights to D. Johnson, a minor. At a preliminary hearing,
the father stated that both of his grandmothers were Native
Americans, although he did not know to which tribe they belonged.
The court, Curtis J. Bell, J., entered an order that provided that
"Caseworker shall make necessary inquiry and/or notification as
to possible Native American Indian heritage of [the minor child]
through father." A subsequent case service plan and updates to the
plan executed by the caseworker and her supervisor indicated that
the Native American heritage question had been asked and that
there was no applicable tribal affiliation. The subsequent order
entered by the trial court terminated the parents' parental rights.
On that order, the trial court did not check the box next to the
statement that provided that the child is an American Indian
child. The respondent mother appealed, alleging, in part, violation
of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*.

    The Court of Appeals *held*:

    1. The ICWA provides in 25 USC 1912(a) that, where the court
knows or has reason to know that an American Indian child is
involved, the party seeking the foster care placement of, or
termination of parental rights to, an Indian child shall notify the
parent or Indian custodian and the Indian child's tribe, by
registered mail with return receipt requested, of the pending
proceedings and of their right to intervention. The standard for
triggering the notice requirements is a cautionary one. Sufficiently
reliable information of virtually any criteria on which tribal
membership might be based suffices to trigger the notice require-
ment. If sufficient indicia of Indian heritage are presented to give
the court a reason to believe the child is or may be an American
Indian child, determination of the tribal status of the child, the
parents, or both requires notice pursuant to 25 USC 1912(a).
Indicia sufficient to trigger tribal notice includes information

suggesting that the child, a parent of the child, or members of a parent's family are tribal members or information indicating that the child has Indian heritage, even though no particular Indian tribe can be identified.

2. The record contains no indication that notice was served under 25 USC 1912(a) in this case. Conditional reversal is necessary in order to determine whether the child is an American Indian child under the law. On remand, the trial court may first explore whether the caseworker did an investigation and reached the conclusion set forth in the service plans or whether the father's claim was entirely discredited by the Department of Human Services. If, following such inquiry, the trial court determines that there is even the slightest possibility that the child is an American Indian child, or if the trial court does not conduct such inquiry, the trial court must order service of the ICWA notice.

3. The trial court did not clearly err by determining that termination of parental rights was in the child's best interests.

Conditionally reversed and remanded.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT — NOTICE OF PROCEEDINGS.

Where a court knows or has reason to know that an American Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an American Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right to intervention; sufficiently reliable information of virtually any criteria on which tribal membership might be based suffices to trigger the notice requirement (25 USC 1912(a)).

*Jeffrey S. Getting*, Prosecuting Attorney, and *Heather S. Bergmann*, Assistant Prosecuting Attorney, for petitioner.

*R. Scott Ryder* for respondent.

Before: MURPHY, C.J., and O'CONNELL and K. F. KELLY, JJ.

MURPHY, C.J. Respondent mother appeals as of right the trial court's order terminating her parental rights

to the minor child under MCL 712A.19b(3)(g) and (h). For the reasons stated in this opinion, we conditionally reverse and remand for further proceedings.[1]

At the preliminary hearing, and upon inquiry by the trial court, the minor child's father stated that his deceased grandmothers were both "full-blooded" Native Americans, although he did not know to which tribe they belonged. In response, the court asked the assigned caseworker from the Department of Human Services (DHS) to investigate the question of the child's Native American heritage. In an order relative to the preliminary hearing, the trial court ordered: "Caseworker shall make necessary inquiry and/or notification as to possible Native American Indian heritage of [the minor child] through father." The initial case service plan, which was executed by the caseworker and her DHS supervisor approximately two months after the preliminary hearing order was entered, provided that the child "does not identify with a Native American Heritage" and that "[n]o Native American heritage [is] identified at this time." In subsequent updated case service plans, it was repeatedly indicated that the Native American question had been asked and that there was no applicable tribal affiliation. In the trial court's order terminating parental rights, the court did not check the box next to the statement that provided that the child is an American Indian child.

Respondent mother argues on appeal that the trial court erred when it failed to determine, on the record, the Native American heritage of the minor child and erred by not complying with the terms of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, after the court was put on notice at the preliminary hearing of

---

[1] The father's parental rights were also terminated, but he is not a party to this appeal.

the child's Native American roots. "Issues involving the application and interpretation of ICWA are questions of law that are reviewed de novo." *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012). Any underlying factual findings are reviewed for clear error. *Id.*

Under the ICWA, in 25 USC 1912(a), Congress provided, in relevant part:

> In any involuntary proceeding in a State court, *where the court knows or has reason to know that an Indian child is involved*, the party seeking the foster care placement of, or termination of parental rights to, an Indian child *shall notify the parent or Indian custodian and the Indian child's tribe*, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. [Emphasis added.]

In *Morris*, the Michigan Supreme Court exhaustively examined the ICWA, and in particular 25 USC 1912(a), and summarized its construction of the law as follows:

> While it is impossible to articulate a precise rule that will encompass every possible factual situation, in light of the interests protected by ICWA, the potentially high costs of erroneously concluding that notice need not be sent, and the relatively low burden of erring in favor of requiring notice, we think the standard for triggering the notice requirement of 25 USC 1912(a) must be a cautionary one. Therefore, we hold first that sufficiently reliable information of virtually any criteria on which tribal membership might be based suffices to trigger the notice requirement. We hold also that a parent of an Indian child cannot waive the separate and independent ICWA rights of an Indian child's tribe and that the trial court must maintain a documentary record including, at minimum, (1) the origi-

nal or a copy of each actual notice personally served or sent via registered mail pursuant to 25 USC 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice. Finally, we hold that the proper remedy for an ICWA-notice violation is to conditionally reverse the trial court and remand for resolution of the ICWA-notice issue. [*Morris*, 491 Mich at 88-89.]

"If sufficient indicia of Indian heritage are presented to give the court a reason to believe the child is or may be an Indian child, determination of the tribal status of the child, the parents, or both requires notice pursuant to 25 USC 1912(a)." *Id.* at 124. The *Morris* Court indicated that "indicia sufficient to trigger tribal notice includes[, in part,] situations in which (1) the trial court has information suggesting that the child, a parent of the child, or members of a parent's family are tribal members, [or] (2) the trial court has information indicating that the child has Indian heritage, even though no particular Indian tribe can be identified[.]" *Id.* at 108 n 18.

Here, the record contains no indication that notice was served under 25 USC 1912(a), nor is there any claim that such notice was ever served, apparently because there was a determination, or at least it was stated in court documents, that the minor child is not an American Indian child. Although we are a bit hesitant to do so under the circumstances, we conclude that conditional reversal is appropriate, especially considering "the potential costs of erroneously failing to send notice." *Morris*, 491 Mich at 106. "[I]f the trial court errs by concluding that no notice is required and proceeds to place the child into foster care or terminate parental rights, the purposes of ICWA are frustrated and the Indian child, the parent or Indian custodian, or

the Indian child's tribe may petition to have the proceedings invalidated pursuant to 25 USC 1914." *Id.* at 107-108.

It is unclear from the record exactly how or why the caseworker came to the conclusion, reflected in the case service plans, that the minor child is not an American Indian child. for purposes of 25 USC 1912(a); some elaboration would have been appropriate given the father's assertion. There is no indication that an inquiry or investigation was made specifically with respect to the father's claim made at the preliminary hearing, nor an explanation in regard to why the father's claim was being discounted, assuming it was evaluated or pondered in the first place, to the extent that the ICWA notice requirement was not triggered. Of special concern to us is the fact that the initial case service plan, in its summarization of the trial court's preliminary hearing order, made no mention of the court's command that the caseworker "make necessary inquiry and/or notification as to possible Native American Indian heritage . . . ." Furthermore, there is no clear confirmation by the court itself that its initial concerns of whether the child is an American Indian child were alleviated. Moreover, the father's assertion concerning the Native American heritage of the minor child's paternal great-grandmothers fits within the parameters of the examples given by the *Morris* Court, quoted above, that would trigger the need to serve notice. *Morris*, 491 Mich at 108 n 18. Finally, petitioner itself concedes that conditional reversal is necessary in order to determine whether the minor child is an American Indian child under the law.

The remedy in this situation, given our ruling, later in this opinion, rejecting respondent mother's best-interests argument, is conditional reversal of the termi-

nation order for resolution of the ICWA-notice issue. *Id*. at 121-123. In *Morris*, the Court, which was addressing consolidated appeals, explained the nature of the proceedings to take place on remand:

> On remand, the trial courts shall first ensure that notice is properly made to the appropriate entities. If the trial courts conclusively determine that ICWA does not apply to the involuntary child custody proceedings—because the children are not Indian children or because the properly noticed tribes do not respond within the allotted time—the trial courts' respective orders terminating parental rights are reinstated. If, however, the trial courts conclude that ICWA does apply to the child custody proceedings, the trial courts' orders terminating parental rights must be vacated and all proceedings must begin anew in accord with the procedural and substantive requirements of ICWA. [*Id*. at 123.]

The circumstances here differ from those in the two cases addressed in *Morris*, wherein the trial courts there found that the children were indeed American Indian children but the courts either did not order notification or failed to make the proper documentary record showing service of notice. *Id*. at 90-97. In the case at bar, it is conceivable that the caseworker did a thorough investigation and inquiry as directed by the trial court, resulting in the conclusion set forth in the initial case service plan and subsequent updated service plans. It is also conceivable that the Native-American-grandmothers claim made by the father, who has an extensive criminal history, including retail fraud, was entirely discredited by DHS. On remand, the trial court may first explore these possibilities, or it may directly proceed with ordering the service of the ICWA notice. If it chooses the former, we direct the court to order ICWA notification if, after the court's initial inquiry, it concludes that there is even the slightest possibility that the minor child is an American Indian child.

Respondent mother also argues that the trial court erred by finding that termination of her parental rights was in the minor child's best interests. A trial court's finding that termination is in a child's best interests is reviewed under the clearly erroneous standard. MCR 3.977(K); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). After a trial court has established a statutory ground for termination by clear and convincing evidence, the trial court shall order termination of parental rights if it finds by a preponderance of the evidence "that termination of parental rights is in the child's best interests[.]" MCL 712A.19b(5); see *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When addressing a child's best interests, a trial court may consider the child's need for permanence. *In re McIntyre*, 192 Mich App 47, 52-53; 480 NW2d 293 (1991). A trial court may also consider a parent's parenting ability and the child's need for stability. *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012).

Here the trial court did not clearly err when it determined that termination was in the minor child's best interests. Although there was evidence that respondent mother had appropriate parenting skills, on December 19, 2012, respondent mother was sentenced to six years' imprisonment for her participation in a bank robbery. Respondent mother testified during the termination hearing that she believed that it would be two years before she would be released from prison and that when she was released from prison, she would have to complete six months to a year at a "halfway-house." There was also evidence that the child was thriving in foster care and had developed a very strong attachment

to the foster mother. On this record, the trial court did not clearly err when it found that termination was in the minor child's best interests because of the child's need for permanence and stability. MCR 3.977(K).

We conditionally reverse the trial court's order terminating respondent mother's parental rights and remand for the purpose of ICWA compliance. We do not retain jurisdiction.

O'CONNELL and K. F. KELLY, JJ., concurred with MURPHY, C.J.